CITIZENS' SAV. & INV. CO. *v.* HUNT'S GARAGE.

[91 South. 133. No. 22297.]

SALES. *Conditional buyer with known purpose to resell may sell to bona fide purchaser.*

A vendee of goods under a contract that reserves title in the vendor until payment is made intending, at the time of the purchase, with the knowledge of the vendor, to resell the goods, has the power to dispose of them to a *bona-fide* purchaser or incumbrances without notice free from any claim of his vendor thereto.

APPEAL from chancery court of Lauderdale county.

HON. G. C. TANN, Chancellor.

Suit by Hunt's Garage, Incorporated, against J. A. McKenzie and others, in which the Citizens' Savings & Investment Company intervened. Bill dismissed as to the defendant Lillian McKenzie, and judgment rendered against the defendant J. A. McKinzie for the amount due the complainant, and also for the amount due the intervener, and

declaring a lien in favor of complainant to be paramount
to the intervener's lien, and the intervener appeals. Re-
versed, and judgment rendered.

Counsel for appellee state the case presented by the rec-
ord herein as follows:

There were four parties to this suit in the court below,
to-wit, Hunt's Garage, Incorporated, the complainant, J.
A. McKenzie and his wife, Lillian McKenzie, defendants,
and the Citizens' Savings & Investment Company, the in-
tervener. The defendant, J. A. McKenzie was indebted to
both the complainant and the intervener, who each claimed
a lien on a certain Premier automobile, the subject-matter
of this controversy.

The court by its final decree dismissed the bill as to Mrs.
McKenzie but rendered judgment against the defendant J.
A. McKenzie for the amount due the complainant, and also
for the amount due the intervener, and declared a lien
in favor of the complainant and the intervener, on the
automobile in controversy, for the collection of their re-
spective debts. The court also declared the lien in favor of
the complainant to be paramount to the lien of the inter-
vener. (See Record, p. 135 et seq.)

The only party prosecuting this appeal is the intervener,
the Citizens' Saving & Investment Company, and the only
question for solution on this appeal is whether or not, at
the date of the rendition of the decree in the court below,
the lien existing in favor of the complainant was superior
or paramount to the lien existing in favor of the intervener.
In order to reach a proper solution of this question, it is
necessary for us to understand the situation of the parties
and their relations to each other and to the automobile in
question.

The complainant, Hunt's Garage, Inc., was a corpora-
tion domiciled in Jackson, Miss., engaged in the business
of dealing in automobiles, and pursuant to a contract with
the Murphy Machinery & Equipment Company of Mem-
phis, Tenn., had on the 19th day of April, 1920, acquired
the exclusive right to sell Premier cars in the state of Miss-

issippi, except in certain counties named in the contract (Record, 25, 50, 29).

The defendant J. A. McKenzie resided at Meridian, Miss., and was engaged in the business of dealing in automobiles under the trade-name of J. A. McKenzile Motor Company.

The intervener was a corporation domiciled in New Orleans, La., and was engaged in the business of purchasing from dealers in automobiles the retained title notes of persons who had purchased cars from the dealer.

On July 24, 1920, the complainant granted to the defendant McKenzie the exclusive right to sell Premier cars in the counties of Lauderdale, Newton, Jasper, and Clarke, in the state of Mississippi (Record, 99), and on July 26, 1920, two days later, sold the defendant two Premier cars at and for the stipulated price of three thousand nine hundred and fourteen dollars each (Record, 4 and 5). The defendant executed his two notes for three thousand nine hundred and fourteen dollars each, due August 26, 1920. Upon the execution of the notes the two cars were delivered to the defendant, who took them to Meridian and placed them in his sales room. The complainant knew that the defendant was a dealer in automobiles and that he was purchasing these two cars for resale. By the terms of the two notes above mentioned the title and ownership of the cars was retained by the complainant until fully paid for (Record, 4, 5, and 61).

A short while before the notes fell due, the defendant sold one of the cars to Dr. Sherrod and received in payment a used Haynes car and one thousand five hundred dollars in cash, but did not pay complainant for either of the cars with the proceeds. When the notes fell due on August 26, 1920, the complainant began pressing the defendant for payment, and the defendant having sold one of the cars to Dr. Sherrod, and having failed to pay for it, conceived the scheme of raising money on the remaining car with which to pay for the car sold to Dr. Sherrod.

So on September 2, 1920, he pretended to sell this remaining car, being the car here in controversy, to himself and to execute a series of ten notes to himself aggregating three thousand two hundred seven dollars and sixty cents, in and by which notes he pretended to reserve the title to the car until he paid himself for it in full (Record, 38 to 47). At the same time and as a part of the same scheme, he pretended to execute and deliver to himself what is denominated a "Conditional Sales Agreement." (Record, 47 to 51), in and by which he solemnly sells to and purchased from himself the car in question, reserving the title until fully paid for and binding himself to himself to keep divers and sundry covenants and agreements therein contained, which instrument he solemnly acknowledged on September 3, 1920. In further pursuance of such scheme, he executed a pretended transfer of the "Conditional Sale Contract," and the notes described therein, to the intervener, the Citizens' Savings & Investment Company of New Orleans, which assignment is dated at Meridian, Miss., September 2, 1920. All these various documents were filled out on forms furnished by the intervener (Record, 105).

Armed with these documents, he went to New Orleans on September 7, 1920, and delivered them to the intervener and received therefor a check drawn by the intervener in favor of defendant for two thousand eight hundred eleven dollars and sixty cents, which he took to Jackson the next day and indorsed to the complainant in part payment for the Sherrod car. In due course the check was collected, the note for the Sherrod car was finally paid and cancelled, and was delivered up to the defendant.

The defendant failed to tell the intervener that the complainant had a claim against or a lien on the car in question, and, on the other hand, failed to tell the complainant at any time that he had in any way hypothecated or incumbered the car in controversy to raise the two thousand eight hundred eleven dollars and sixty cents or any other sum whatever (Record, 110, 112, 125).

After having "sold the car to himself" as above stated, the defendant removed it from his place of business and from his sales room and began to use it as his "personal car," and did not any longer offer it for sale, or keep it in his sales room (Record, 74, 83, 85).

The defendant having failed to pay the note to complainant for three thousand nine hundred and fourteen dollars, the complainant filed suit in the chancery court to enforce its lien against the car and caused a writ of sequestration to issue to preserve the *status quo* until the final decree of court. After the cause had been pending for about seven months, the intervener filed its petition of intervention and was permitted to propound its claim to the car.

*S. M. Graham,* for appellant.

In consideration of facts, the first conclusion we reach is that when appellee sold the two Premier cars to the defendant and permitted the defendant to acquire them in his business as a trader and place same in his stock of merchandise to be disposed of without restriction, is that they thereby lost their lien against the property against all persons dealing with the defendant. Since even a recorded lien could not be retained on a stock of merchandise, surely a secret lien, as in this case, could not be retained, as a right to sell destroys such a lien. *Paine* v. *Hall Safe and Lock Co.,* 64 Miss. 175-123, 1 So. 56.

In which case, this court speaking through Judge CAMP-BELL, in construing section 4784, Miss. Code 1906, said: "By it, a change was made as to the class of persons contemplated by it; while the former law as to conditional sales, with all the incidents, remain as it was as to the great body of the people, would be changed by this section as to all that fall under the designation of the traders, and they are to be treated as the absolute owners of what they acquire or use in business so far as its liability to their creditors is concerned. The evil of permitting a separation of title and possession is found to exist and bear its worst

fruit among those called by the general designation of the traders, and hence the effort to correct it, as far as possible, by the just requirement of true signs, and in the absence of such *indicia* of ownership springs from the possession, dominion and control of the property. This may operate hardly in some cases, but that is a common incident of laws that are designed for their common effect, and are to be judged by that and not by particular incidents." If possession retained by the mortgagor with power of sale, this will make it fraudulent.

A stipulation that the mortgagor shall retain the use and possession of personalty embraced in the mortgage and shall continue to use and have the right to dispose of the same, until the trustee shall deem it necessary to take possession, is voidable only by those creditors who obtain liens before the trustee takes possession. *Summers* v. *Roos*, 42 Miss. 749, 2 Am. Rep. 653.

So that in this case, when the plaintiff permitted McKenzie to acquire the two Premier cars in his business as a trader and delivered possession to McKenzie with full authority to McKenzie, to sell or dispose of same, the lien, by retention of title in the plaintiff, was lost. This court has held time and time again, that a retention of title was but a lien held as security and the fact that it is only a lien is too well settled to cite authorities.

In the case at bar McKenzie was given possession of the property, he being a dealer or trader, with the full knowledge that the purpose of McKenzie was to resell. This same doctrine is announced by this court in the following cases: *Harmon* v. *Hopkins,* 56 Miss. 142; *Joseph* v. *Levi,* 58 Miss. 843; *Johnson* v. *Tuttle,* 65 Miss. 429, 430, 553; *Britton* v. *Criswell,* 63 Miss. 394; *Bank* v. *Goodbar,* 73 Miss. 566, 19 So. 204; *First National Bank* v. *Caperton,* 74 Miss. 857, 22 So. 60; *Andrews* v. *Partee,* 79 Miss. 80, 19 So. 788. In which last case it was held that if the mortgagor was permitted to use the mortgaged property, the mortgage was fraudulent.

The claim of Hunt's Garage also runs counter to our sign statute 4784 of Mississippi Code of 1906, which conclusively presumes that all property in the hands of a trader, used or acquired in his business, to be the property of the trader, and as McKenzie was a trader and acquired the property in question in his business as a trader, the statute applies with full force and effect. Because retention of title note was not recorded and at the time appellant parted with his money on a retention title note and contract covering the car involved in the suit, he did so without any knowledge either actual or constructive, touching the claim of appellee. *Fitzgerald* v. *American Manufacturing Company*, 74 So. 440; *Hunter* v. *Forrest*, 75 So. 753; *Orr* v. *Jackson Jitney Car Service*, 75 So. 945; *Bank* v. *Studebaker*, 71 Miss. 544; *Columbus Buggy Company* v. *Turley*, 73 Miss. 529; *Merchants, etc., Bank* v. *Schaaf*, 108 Miss., 121; *Gillespey* v. *International Harvester Company*, 109 Miss. 136; *Dumbell* v. *Koon*, 59 Miss. 264; *Quinn* v. *Myles*, 59 Miss. 375; *Shannon* v. *Blem*, 60 Miss. 828; *Howe* v. *Kerr*, 69 Miss. 311; *Meridian Land, etc., Company* v. *Ormond*, 82 Miss. 758; *Payne Hardware Company* v. *International Harvester Company*, 110 Miss. 783.

*Amis & Dunn*, for appellee.

Whatever may be said of the effect of the conditional sale contract, evidenced by the note for three thousand nine hundred and fourteen dollars sued on in this case, there can be no question that it was at all times valid and binding between the parties thereto. It is only when the rights of other persons intervene that any question can arise concerning the rights of the complainant as defined in the note. See *Ross-Meehan Brake Shoe Foundry Co.* v. *Pascagoula Ice Company*, 72 Miss. 608; *Hunter* v. *Crook*, 93 Miss. 812; 24 R. C. L. 444.

2. While it may be true that when the complainant sold the two Premier cars to the defendant, with knowledge that he intended to place them on sale in his place of busi-

ness at Meridian, that the complainant waived its retained title in favor of any *bona-fide* purchaser, for value without notice of complainant's claim (24 R. C. L. 459; *Columbus Buggy Co.* v. *Torly,* 73 Miss. 529), yet so long as the cars remained unsold to a *bona-fide* purchaser for value without notice, complainant's reserved title lien was valid and binding. See *Ross-Meehan, etc.,* v. *Ice Company,* 72 Miss. 608; *Hunter* v. *Crook,* 93 Miss. 812; *Burbank* v. *Crooker,* 7 Gray 158; *Stone et al.* v. *Waite,* 7 So. 117; *Rogers* v. *Whitehouse,* 71 Maine, 222.

3. And even though the complainant knew at the time it sold the cars to the defendant, that he intended to place them on sale in his place of business at Meridian, and that he expected, at that time to resell them for profit, yet the complainant did not waive its lien in favor of any purchaser who, at or before the time of such purchase, had full notice and knowledge of complainant's claim. See *Range Co.* v. *Allen,* 7 So. 499; *Herman* v. *Watson,* 118 Miss. 269.

4. As against a purchaser having notice and knowledge of complainant's reserved title lien, the lien was not waived but remained in full force and effect, binding the property in the hands of such a purchaser as fully as it did while in the hands of complainant's vendee. See *Range Company* v. *Allen,* 7 So. 499; *Herman* v. *Watson,* 118 Miss. 269.

5. And if such a purchaser, with notice, subsequently sells or mortgages the car without the knowledge or consent of the complainant, the lien of the complainant is not affected in the least but follows the car into the hands of the remotest mortgagee or vendee. See 35 Cyc. 673; *Bell* v. *Old,* 88 Ark. 99, 113 S. W. 1023; *Hyatt* v. *Bell,* 83 Ark. 360, 103 S. W. 748. Nor is it necessary in this state to record any instrument which reserves the title to personal property sold as a lien to secure payment of the purchase price; but every such lien follows the property into the hands of subsequent purchasers or incumbrancers, with or without notice, unless waived in some way by the orig-

inal vendor.   See 53 Miss. 596; *Journey* v. *Priest,* 70 Miss. 584; *Duke* v. *Shackleford,* 56 Miss. 552, 34 R. C. L. 465.

SMITH, C. J., delivered the opinion of the court.

The statement of the case presented by this record set forth in the first three and one-half pages of the brief of counsel for the appellee is correct and is directed to be published by the Reporter in full.

The right of the appellant to intervene herein is not challenged by the appellee.

By selling the automobile to McKenzie for the purpose of being placed in his sales room for resale, the appellee clothed McKenzie with the apparent ownership of the automobile and is estopped to deny that he was the owner thereof in fact against subsequent *bona-fide* purchasers and incumbrancers for value. *Columbus Buggy Co.* v. *Turley,* 73 Miss. 529, 19 So. 232, 32 L. R. A. 260, 55 Am. St. Rep. 550; *Parry Mfg. Co.* v. *Lowenberg,* 88 Miss. 532, 41 So. 65. From which it follows that the lien of the appellant on the automobile is superior to that of the appellee.

The decree of the court below will be reversed, and a decree will be rendered here in accord with that rendered in the court below, except that the proceeds of the sale of the automobile will be directed to be applied first to the payment of the debt due by McKenzie to the appellant, second, to the debt due by him to the appellee, and the remainder, if any, to be paid to McKenzie himself.

*Reversed and judgment here.*